# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| **CONNIE LYNN GREENE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:22-cv-00037** |
| | ) | **Judge Frensley** |
| **KILOLO KIJAKAZI,** | ) | |
| **COMMISSIONER OF SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Connie Lynn Greene brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Social Security Administration's denial of her application for disability insurance benefits and supplemental security income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal directly to the Sixth Circuit Court of Appeals. The court has reviewed the administrative record, the briefs of the parties, and applicable law. Plaintiff's Motion for Judgment on the Record is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

## I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on November 13, 2019, alleging onset of disability on September 26, 2019, due to generalized anxiety disorder, major depressive disorder, hypertension, rheumatoid arthritis of the knees, hips, hands, and lower back, disc protrusion, unknown temporomandibular joint, and unknown right leg problem. Docket No. 8 ("TR"), pp. 221-22, 237. The Social Security Administration denied Plaintiff's

application both initially (TR 111) and upon reconsideration (TR 133). She subsequently requested a hearing before Administrative Law Judge ("ALJ") J. Dennis Reap, which was conducted via telephone on May 28, 2021. TR 33, 139. Plaintiff and vocational expert ("VE"), Barbara Holmes, appeared and testified. TR 33.

The ALJ issued a decision unfavorable to Plaintiff on July 1, 2021, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 13-32. Specifically, the ALJ made the following findings of fact:

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2020.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 26, 2019 through her date last insured of September 30, 2020 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: Anxiety disorder, obsessive-compulsive disorder; depressive disorder; bipolar disorder (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can understand, carryout [*sic*], [and] remember[] simple[,] routine tasks for two-hour periods with a normal level of supervision and do so for an eight-hour day with customary breaks; can occasionally interact with coworkers and supervisors but needs to avoid public interaction and work with objects instead of people; avoid fast paced production work tasks with a quota; and can adapt to occasional changes in work routines.

The hypothetical posed to the VE during the hearing included exertional/physical limitations. However, based on a port-hearing review, the exertional limitations are overly restrictive. However, in the alternative, even if the claimant's physical impairments were severe, limiting her to the range of work in the hypothetical, a significant number of jobs exist.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 23, 1967 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 26, 2019, the alleged onset date, through September 30, 2020, the date last insured (20 CFR 404.1520(g)).

TR 19-26.

On August 23, 2021, Plaintiff timely filed a request for review of the hearing decision.

TR 215-217. The Appeals Council issued a letter declining to review the case on July 26, 2022,

thereby making the ALJ's decision the final decision of the Commissioner. TR 1-3. Plaintiff

subsequently filed the instant action, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the

Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A) Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison Co.*, 305 U.S. 197 at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

4

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980)). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based on the record." *Miller*, 811 F.3d at 833 (citing *Gentry*, 741 F.3d at 722 (internal citations omitted)); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

**B) Proceedings at the Administrative Level**

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not

only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 3(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

5. The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform given his or her age, experience, education, and residual functional capacity.

*See, e.g.*, 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a non-exertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and non-exertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

**C) Analysis**

On its face, Plaintiff's Motion for Judgment on the Record explicitly raises a single assertion of error: "The ALJ's evaluation of the opinions of Mary Dawn Cox, Ed.D. and Chassie Harris, FNP-C is legally erroneous as he failed to properly assess the persuasiveness of these opinions as required by 20 CFR § 404.1520c." Docket No. 13-1, p. 4. However, Plaintiff also

argues that "the ALJ's decision fails to properly explain the foundation for [his calculation of the] RFC, thereby frustrating meaningful review and rendering the ALJ's conclusion unsupported." *Id.* at 6. Accordingly, Plaintiff maintains that the Commissioner's decision should be vacated and remanded. *Id.* at 14. However, because substantial evidence exists to support the ALJ's finding that Plaintiff was not disabled, the Commissioner's decision must be affirmed.

### 1. <u>Reliance on Opinion Evidence</u>

In his opinion denying benefits to Plaintiff, the ALJ described the assessments of both Dr. Cox and FNP Harris as "overly restrictive" and specifically deemed Dr. Cox's opinion "unpersuasive[] and inconsistent with the medical evidence as a whole." TR 24-25. The ALJ explained his decision regarding Dr. Cox's opinion as follows:

> On April 5, 2021, Mary Dawn Cox, Ed.D., provided an assessment regarding the claimant's ability to work and function effectively. She opined the claimant markedly limited in the claimant's ability to understand, remember, or apply information; markedly limited in her ability to interact with others; extremely limited in her ability to concentration [*sic*], persist, or maintain pace; adapt or manage oneself. She concluded the claimant's prognosis was poor and she would be expected to be absent at least four days per month due to impairment related symptoms and treatment (Exhibit B-21F).

> The opinion provided by Dr. Cox is overly restrictive. She indicated the claimant was markedly to extremely limited in terms of memory functioning, work like procedures, carrying out detailed written or oral instructions; maintaining concentration in five-minute increments of time; would be off tasks 25% of the workday; and is expected to be absent from work more than four days per a [*sic*] month. Nevertheless, the evidence discussed above fails to identify more than moderate mental limitations (Exhibits B-2A; B-5A). Treatment notes document stability of symptoms (Exhibits B-3E page 5). Additionally, there was no evidence of psychosis or abnormal thought processes. In January 2019, while seeking treatment for other unrelated ailments, the claimant was noted to be alert and oriented in all four spheres. Her mood and affect were appropriate. Symptoms of depression and anxiety were denied. In fact, as recently as February 2020, the claimant's mood

8

was reportedly improved. It appears situational factors involving family members exacerbate her condition rather than actual mental impairments (Exhibit B-2F pages 5, 6; B-26F page 16).

TR 24. The ALJ explained his decision regarding FNP Harris's opinion as follows:

> On May 21, 2021, Chassie Harris, FNP-C, provided an assessment regarding the claimant's ability to engage in work activity. She opined the claimant could lift and carry up to ten pounds; sit eight hours in an eight-hour workday; stand and walk one hour in an eight-hour workday; frequently handle and finger; occasionally push and pull, reach overhead and in all other directions; frequently operate foot controls with both feet; occasionally move mechanical parts; have occasional exposure to humidity, wetness, dusts, odors, fumes, and pulmonary irritants; have occasional exposure to extreme cold, extreme heat, and vibrations. She concluded the claimant would be absent more than four days per month due to impairment related symptoms (Exhibit B-25F).

> The undersigned finds the opinion provided by Ms. Harris' [sic] is overly restrictive. Specifically, the record fails to indicate the frequency of treatment with this provider and the opinion fails to cite to specific references, which would support such limitations. Further, the claimant has not received any outpatient mental health treatment during the relevant period, nor has he [sic] been hospitalized for such conditions. And when treated for physical ailments, no acute mental deficits were identified.

TR 24.

Plaintiff argues that the ALJ's analysis of the opinion of Dr. Cox is mischaracterized in that it only references normal examination findings and disregards both "numerous abnormalities" and "probative" results of Plaintiff's October 2019 assessment from Linda Bonifeld, FNP. Docket No. 13-1, pp. 10, 12. Furthermore, Plaintiff asserts that the ALJ disregarded FNP Harris's assessment of Plaintiff's physical limitations and focused instead on a purported "stability of symptoms" with regard to Plaintiff's mental health. *Id.* at 11.

Defendant responds that the interpretations of Plaintiff's treatment notes by both the ALJ and state agency medical consultants are supported by substantial evidence, noting that the

marked and extreme limitations described in the opinions of Dr. Cox and FNP Harris are inconsistent with the mild limitations described in Plaintiff's medical and treatment records. Docket No. 18, pp. 9-10, 13-14.

Plaintiff correctly points out that current regulations require ALJs to consider five factors in deciding the persuasiveness of a medical opinion, specifically addressing and explaining at least the first two in their analysis:

> **(1) Supportability.** The more relevant the objective medical evidence and explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> **(2) Consistency.** The more consistent a medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> **(3) Relationship with the claimant.** This factor combines consideration of the issues in *paragraphs (c)(3)(i) through (v)* of this section.
>
>> **i. Length of the treatment relationship.** The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>>
>> **ii. Frequency of examinations.** The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>>
>> **iii. Purpose of the treatment relationship.** The purpose for the treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).
>>
>> **iv. Extent of the treatment relationship.** The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

10

**v. Examining relationship.** A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

**(4) Specialization**. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

**(5) Other factors.** We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. § 404.1520c. The ALJ's discussion of supportability and consistency must be supported by an adequate explanation of the "persuasiveness" for all expert opinions, such that the appellate court may be provided with sufficient information to conduct a meaningful appellate review of the decision-making process. *Wilson*, 378 F.3d at 544-45. The courts must be able to read the decision and know what evidence the ALJ considered and understand why the ALJ reached a given result. *See id.* Whenever the agency reaches a decision that is unfavorable to a claimant, in whole or in part, the decision must "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons." 42 U.S.C. § 405(b)(1).

11

However, the new regulations state that the ALJ will not defer or give any specific evidentiary weight to any medical opinion, even a treating source. 20 C.F.R. § 404.1520c(a). The ALJ may properly:

> use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include but are not limited to:
>
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).

20 C.F.R. § 404.1513(d).

Here, the ALJ properly considered the opinions of Dr. Cox and FNP Harris and cited substantial evidence in determining that both opinions were inconsistent and unsupported. The ALJ pointed to the fact that "[w]hile [Plaintiff] testified to debilitating symptoms and treatment, treating staff did not observe [Plaintiff] with the level of symptoms as she alleged." TR 22. While Dr. Cox indicated that Plaintiff's prognosis was "poor," the ALJ noted that no evidence of psychosis or abnormal thought processes was ever presented, that Plaintiff "denied symptoms of depression and anxiety" in January 2019, and that "as recently as February 2020, [Plaintiff's] mood was reportedly improved." TR 24, 25. In considering the assessment of FNP Harris, the ALJ also pointed out that the record fails to indicate the frequency of Plaintiff's treatment with her and that Plaintiff never received any inpatient or outpatient mental health treatment during the relevant period. TR 24, 25. The ALJ's findings illustrate that he considered both opinions and determined that the opinions weighed against Plaintiff. As noted above, this Court may not substitute its own factual findings.

Moreover, an ALJ may consider the opinion of a non-examining physician designated by the Secretary in determining whether a claimant has medically determinable impairments.

*Reynolds v. Sec'y of Health & Human Servs.*, 707 F.2d 927, 930 (6th Cir. 1983). Here, the ALJ incorporated the opinions of state agency consultants Frank Pennington, M.D., Larry Welch, Ed.D., and Frank Kupstas, Ph.D. TR 23. After examining Plaintiff's medical records, each of these consultants found that Plaintiff was "Not Disabled." TR 109-110, 130. Although the ALJ was not fully persuaded by these findings (TR 23), the findings, in conjunction with other evidence in the record, do provide the ALJ with "substantial evidence" to support his finding that Plaintiff was not disabled.

### 2. <u>Residual Functional Capacity ("RFC")</u>

Plaintiff asserts that the ALJ "failed to adequately explain his assessment of supportability and consistency as required under the governing regulations . . . thereby frustrating meaningful review and rendering the ALJ's conclusion unsupported." Docket No. 13-1, pp. 5-6. Specifically, Plaintiff contends that the ALJ's "vague reference to 'the evidence discussed above' as a basis for considering supportability and/or consistency is woefully inadequate" under relevant case law from this jurisdiction. *Id.* at 9. According to Plaintiff, the ALJ's basis for consideration is merely a legally insufficient "'extensive summarization' [of the evidence] earlier in the decision." *Id.*

Defendant responds that the ALJ "properly determined that Plaintiff retained the RFC to perform a reduced range of simple work with social limitations" and "articulated appropriate bases for the weight given the evidence of record." Docket No. 18, pp. 5, 6, *citing* TR 19-24. Moreover, Defendant points to the ALJ's conclusion that "[r]elying on vocational expert testimony . . . Plaintiff could perform other work existing in significant numbers, including work as a garment sorter, a photographic machine operator, and a slot tag inserter." *Id.* at 4, *citing* TR 26. With respect to Plaintiff's assertion that the ALJ cannot refer to an earlier summary of the

Case 1:22-cv-00037   Document 19   Filed 05/31/23   Page 13 of 16 PageID #: 808

record, Defendant counters that the ALJ also cited to the clinical findings with citation to exhibits (*Id.* at 12, *citing* TR 24) and points to various cases within the Sixth Circuit that found referrals to other sections of the decision acceptable. *Id.* at 12.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR § 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ here ultimately determined that Plaintiff retained the RFC to perform "a full range of work at all exertional levels" but with certain non-exertional limitations.[1] TR 21. Specifically, the ALJ determined that, through the date last insured:

> The claimant can understand, carryout [*sic*], [and] remember[] simple[,] routine tasks for two-hour periods with a normal level of supervision and do so for an eight-hour day with customary breaks; can occasionally interact with coworkers and supervisors but needs to avoid public interaction and work with objects instead of people;

---

[1] Defendant asserts that ALJ Neuhoff's 2019 determination that the Plaintiff had no more than mild mental limitations between January 2013 and September 2019 (TR 83-84) is "final and binding and any contrary opinion is therefore inconsistent with the record." Docket No. 18, p. 10. However, subsequent ALJs are not bound by findings from prior ALJs regarding a plaintiff's residual functional capacity when the two disability claims cover distinct time periods. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018). Here, Plaintiff's first disability claim covered the period between January 15, 2013, and September 25, 2019. TR 79. Plaintiff's second disability claim covered the period between November 12, 2019, and July 1, 2021. TR 16. Thus, this Court agrees with ALJ Reap that *Drummond* is inapplicable (TR 17) and that ALJ Neuhoff's findings regarding Plaintiff's residual functional capacity are not binding. Rather, ALJ Reap was entitled to give the record a "fresh look." *See Earley*, 893 F.3d at 931.

avoid fast paced production work tasks with a quota; and can adapt to occasional changes in work routines.

TR 21. The ALJ explained:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520(c).

TR. 21.

In so finding, the ALJ considered the opinion evidence, Plaintiff's medical treatment, and the other medical evidence. TR 19-24. Specifically, regarding Plaintiff's condition, the ALJ stated:

> In July 2016, the claimant was noted to be well groom [*sic*] and attentive. Her speech was verbose. Thought content was goal-directed. Her mood was anxious. She was oriented in in [*sic*] person, time, and place. Both short-term and long-term memory processes were intact. No suicidal ideations were identified. Although nor [*sic*] formal testing was performed, her intelligence was estimated in the average range (Exhibit B-1F pages 5, 6).

> While there is a history of anxiety and trauma, there was no indication of mania, hypomania and anhedonia. The claimant contends her life has detrimentally changed because of her impairments. The claimant reports spending most of her time resting at home. Although she reported reminders for daily activities, there was no evidence of psychosis or abnormal thought processes. Treatment notes document stability of symptoms (Exhibit B-3E page 5).

> Additionally, there was no evidence of psychosis or abnormal thought processes. In January 2019, while seeking treatment for other unrelated ailments, the claimant was noted to be alert and oriented in all four spheres. Her mood and affect were appropriate. Symptoms of depression and anxiety were denied. In fact, as recently as February 2020, the claimant's mood was reportedly improved. It appears situational factors involving family members

exacerbate her condition rather than acute mental deficits of 12-month duration (Exhibit B-2F pages 5, 6; B-26F page 16).

TR 22.

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record and ultimately determined that Plaintiff retained the RFC to perform "a full range of work at all residual levels" with certain nonexertional limitations. TR 21. The ALJ did not just simply refer to an earlier summary of the record, as Plaintiff asserts; rather, the ALJ properly evaluated all of the medical, opinion, and testimonial evidence in reaching his RFC determination and indeed "showed his work." *See Gross v. Kijakazi*, No. 1:21-CV-00022, 2022 WL 4102774, at *7 (M.D. Tenn. Aug. 19, 2022), *report and recommendation adopted*, No. 1:21-CV-00022, 2022 WL 4097708 (M.D. Tenn. Sept. 7, 2022) (quoting *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021)). The Regulations do not require more.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, the Plaintiff's Motion for Judgment on the Record is **DENIED** and the decision of the Commissioner is **AFFIRMED**.

It is so **ORDERED**.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

16